IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| J.S.H., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:23-cv-463-CHW |
| | : | |
| COMMISSIONER | : | |
| OF SOCIAL SECURITY, | : | Social Security Appeal |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff J.S.H.'s application for disability benefits. The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals in the same manner as an appeal from any other judgment of the United States District Court. Because the ALJ's decision is supported by substantial evidence, the Commissioner's decision in Plaintiff's case is hereby **AFFIRMED**.

## BACKGROUND

Plaintiff applied for Title II disability benefits on August 17, 2020, alleging disability beginning on March 10, 2018, based on the following impairments: depression, herniated disc, diabetes, high blood pressure, anxiety, migraines, and right shoulder rotator cuff surgery. (Ex. 1A). Her date last insured (DLI) was March 31, 2022. (R. 12). After Plaintiff's applications were denied initially and on reconsideration at the state agency level of review (Exs. 1A-4A), Plaintiff requested further review before an administrative law judge (ALJ). The reviewing ALJ held a

1

telephonic hearing on April 20, 2023, at which Plaintiff was represented by counsel. (R. 38-58). The ALJ issued an unfavorable opinion on June 28, 2023. (R. 7-29). Plaintiff's request for review of that decision by the Appeals Council was denied on September 27, 2023. (R. 1-6). The case is now ripe for judicial review. *See* 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). To be eligible for benefits, Plaintiff's disability must be established prior to her date last insured. *See id.*

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of

impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## MEDICAL RECORD

The record reflects Plaintiff's treatment with primary care physicians and specialists, emergency room visits, hospital stays, and consultative exams. As Plaintiff's challenge in this case concerns whether the ALJ properly considered medication side effects, this summary focuses on records where any such side effects would likely have been discussed with or addressed by a physician during the relevant period. However, the entire record has been reviewed in consideration of this case.

The record shows that Plaintiff had several prescriptions, including pain medications, throughout the relevant period. Psychiatric records from August 2018 confirm that Plaintiff was prescribed hydrocodone for pain. (R. 432). Notes indicate that in September, October, and December 2018, Plaintiff reported no side effects from her medications, and none were observed by her provider. (R. 438, 441, 447). In November 2018, she reported seeking emergency treatment for hallucinations, which an emergency room doctor attributed to the combination of muscle relaxers and Lunesta. (R. 444); *see also* (R. 477-485) (corresponding emergency room record reflecting that Plaintiff had taken Lunesta, Zanaflex, Ultram prior to her arrival at the ER). No indications of hallucinations were present at the November 2018 appointment. (R. 444).

Plaintiff received primary care at Internal Medicine Associates of Middle Georgia, (Ex. 4F; R. 619). At an appointment on March 2, 2018, Plaintiff reported worsening chronic low and mid back pain, for which Tramadol, injections, and physical therapy had been ineffective. (R. 619-620). She reported quitting her job as a hairdresser to stay home with her children. (R. 619). Due to painful cramps, Plaintiff was prescribed Norco and Tramadol in May 2018. (R. 626). Five days after a July 2018 fall, which fractured her coccyx and for which she went to the ER (R. 527), Plaintiff was still in significant pain. (R. 629). Plaintiff received another Norco prescription. (R. 630). At her next appointment, Plaintiff noted a recent visit to Emory Spine Center and a physical therapy recommendation. (R. 631-632). Plaintiff continued to report back pain in February 2019 and admitted she had not done the recommended physical therapy. (R. 641). Tramadol continued to be ineffective to manage her pain. (*Id.*) At Plaintiff's request, another physical therapy referral was made, but Dr. Goodwin only prescribed a limited amount of Norco tablets until Plaintiff could be seen at a pain clinic. (R. 642). Plaintiff also reported to the emergency room in February 2019 for thoracic pain. (R. 1827-1833). A shoulder injury in April 2019 led Dr. Goodwin to give Plaintiff another limited prescription for Norco. (R. 645, 646). A should x-ray showed osteoarthritis on the shoulder but no fractures. (R. 648).

Plaintiff began treating at a pain clinic in June 2019 for her chronic back pain. (Ex. 5F; *see* R. 682). At her initial appointment, Plaintiff had tenderness at T-10 and pain with extension of her thoracic spine. (R. 680). Notes did not reflect low back pain upon physical examination but recognized Plaintiff's history of low back pain. (R. 680-681). A June 2019 MRI of Plaintiff's thoracic spine showed no abnormalities. (R. 657). At her second appointment, notes indicated that while mediations were not working well, Plaintiff reported no side effects from the medication. (R. 678).

It is unclear how long Plaintiff reported to the pain clinic as the record only reflects treatment from June and July 2019. (Ex. 5F). Records from Dr. Goodwin noted that in January 2020, Plaintiff wanted to be weaned off methadone, which she had received from a methadone clinic over the previous 3 months to ease the effects of quitting Norco. (R. 944). Dr. Goodwin conferred with the pain clinic, where providers agreed to titrate Plaintiff's methadone dose. (R. 945). Plaintiff also reported to the ER in January 2020 for cramps and abdominal pain following her attempts to self-detox from methadone. (R. 1087-1101).

During the relevant period, Plaintiff was admitted in November 2020 to the hospital from the emergency room for a pelvic abscess and other complications after her hysterectomy. (R. 989 993, 1006; Exs. 9F, 10F). Plaintiff also reported a hospitalization for possible complications from methadone to Dr. Goodwin (R. 944), but that hospitalization is not documented in the treatment record before the Court. In February and March 2023, after her DLI, Plaintiff was hospitalized for complications related to COVID. (Ex. 30F).

The medical record also includes treatment occurring at the end of and after the relevant period. This includes treatment from Vineville Internal Medicine, whose staff became Plaintiff's primary care providers in February 2022. (Exs. 22F, 25F, 29F; R. 1883). Dr. Vaughn also completed a clinical pain assessment in September 2022, which greatly limited Plaintiff's functional limitations. (Ex. 23F).

*Consultative Examinations*

Dr. Larmia Robbins-Brinson conducted a psychological consultative examination for Plaintiff in June 2021. (Ex. 11F). At the time of the examination, Plaintiff denied overuse of any pain medication. (R. 1277). She was not under the care of a mental health professional and received her mental health medication from her primary care provider. (*Id*.) Plaintiff drove herself to the

5

appointment and explained that she was able to do chores and tasks, including childcare, but that she easily tired. (R. 1277-1278). Dr. Robbins-Brinson described Plaintiff as having a depressed mood but a good ability to concentrate. (R. 1278). Dr. Robbins-Brinson did not severely limit Plaintiff's abilities to function. *See* (R. 1279).

In July 2021, Plaintiff saw Dr. Chelukala Reddy for a physical consultative examination. (Ex. 12F). Plaintiff explained her history of back pain and attempts to treat her pain, including pain clinic treatment. (R. 1281). She was not taking any prescription pain medication at the time and had not for one year, but she would take Tylenol for pain. (R. 1281-1282). She showed lumbar spine tenderness upon physical examination. (R. 1284). Dr. Reddy opined that Plaintiff had no functional restrictions. (*Id.*)

*Plaintiff's Testimony Before the ALJ*

Plaintiff testified at the April 2023 hearing before the ALJ. At that time, she lived with her husband and minor children in a one-story house. (R. 42-43, 45). Although she had a valid license, Plaintiff stated she had not driven in about eight or nine months due to vision issues. (R. 43). Plaintiff described her past work as a hair stylist and the demands of that position, which her back conditions prevented her from doing. (R. 43, 46). She was able to bathe herself, but she sometimes required help getting in and out of the bath. (R. 45). She was able to wash dishes but could not do laundry because she had trouble bending over and lifting the basket. (R. 45, 52). She tried to cook, run errands, and do other chores, but often became tired and needed to stop and rest. (R. 45-46). Her activities and hobbies were limited to watching TV or reading. (R. 46).

Plaintiff described various ailments, such as back pain, rotator cuff surgery, diabetes, retinopathy, high blood pressure, migraines, and associated complications and limitations. (R. 46-52). Plaintiff had been hospitalized a few times, mostly for breathing issues related to COVID,

such as pneumonia, for which she had been on ventilator. (R. 49-50). Due to remaining issues, Plaintiff received home health services, but only recently before the hearing. (R. 50). She described her various prescription medications and testified that she experienced drowsiness and nausea as side effects, for which she takes Phenergan. (R. 49, 53-54). She explained that the nausea "is associated more with the migraines" and her stomach issues. (R. 53). Plaintiff severely limited her ability to stand, sit, and lift. (R. 51-52).

## DISABILITY EVALUATION

Following the five-step sequential evaluation process, the reviewing ALJ made the following findings in this case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between March 10, 2018, the alleged onset date, and March 31, 2022, Plaintiff's date last insured. (R. 12). At step two, the ALJ found that Plaintiff suffered from a single severe impairment, degenerative disc disease of the lumbar spine. (R. 13). The ALJ found that Plaintiff also suffered from right rotator cuff repair, diabetes with proliferative diabetic retinopathy and decreased vision, hypertension, COVID, migraines, panic disorder, anxiety, and major depressive disorder, but that these impairments were non-severe. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the severity of one of the listed impairments. (R. 15). Therefore, the ALJ assessed Plaintiff's RFC and determined that Plaintiff was capable of performing light work with the following exceptions:

> [T]he claimant was limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. She could occasionally climb ramps and stairs. Further, the claimant could frequently balance, kneel, or crawl. She could occasionally stoop or crouch. Additionally, the claimant could never climb ladders, ropes, or scaffolds. She could no more than frequently reach overhead with the bilateral upper

extremities. Finally, the claimant needed to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards, such as unprotected heights.

(*Id*.)

Based on this RFC, the ALJ found at step four that Plaintiff was not capable of performing any past relevant work. (R. 21). After hearing from a vocational expert, reviewing the record, and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. 21-22). Some of the representative positions noted were routing clerk, housekeeper, and price marker. (R. 22). Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act at any time during the relevant period within the meaning of the Social Security Act. (R. 23).

## ANALYSIS

Plaintiff challenges the ALJ's failure to consider the side effects of Plaintiff's medication and their impact on her ability to maintain employment. (Doc. 8). Plaintiff urges that these errors prevent finding that substantial evidence supports the ALJ's decision. (*Id*.) For the reasons discussed below, the ALJ's decision is supported by substantial evidence because the ALJ considered and discussed the record-supported limitations on Plaintiff's ability to work.

An RFC is an assessment based on all the relevant evidence of a claimant's ability to work despite her impairments, even if some of those impairments were not deemed severe. 20 C.F.R. §§ 404.1545(a)-(b). It is not enough for an ALJ to say that all Plaintiff's symptoms and medically determinable impairments were considered for the RFC to be supported by substantial evidence; the decision must demonstrate that the ALJ did so. *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1064-1065 (11th Cir. 2021). Here, the ALJ found that Plaintiff was capable of performing less than the full range of light work with several limitations. (R. 15). Plaintiff argues that the ALJ

failed to consider Plaintiff's testimony that her medications caused nausea and dizziness and her other complaints about drowsiness. (Doc. 8, p. 4). The record does not support this challenge.

In developing the RFC, the ALJ thoroughly discussed the record, which included state agency physician reviews, medical records, consultative exams, and Plaintiff's testimony. (R. 15-21). The ALJ's decision specifically recounts Plaintiff's testimony that she experienced drowsiness and nausea as side effects of her medication. (R. 16). In finding that Plaintiff's subjective symptoms were not entirely consistent with the record, the decision lists all the factors considered, including "the type, dosage, effectiveness, and *side effects* of any medication the claimant takes or has taken to alleviate pain or other symptoms." (R. 16) (emphasis added). The ALJ examined Plaintiff's treatment record, including records past the relevant period that might establish Plaintiff's disability, before finding that Plaintiff was not as limited as her subjective allegations suggested. (R. 15-21).

The ALJ applied the correct legal standards and appropriately considered Plaintiff's limitations that *were supported by the record*. Plaintiff argues that "she regularly complained of medication side effects" during the relevant period, but she failed to cite to a single doctor's visit in over 2300 pages of medical records to support this claim. (Doc. 8, p. 4). While Plaintiff was often treated for nausea, the nausea was related to migraines, low blood pressure, or stomach ulcers rather than to medication side effects. *See, e.g.,* (R. 829, 851, 865, 879, 936, 1001, 1033, 1049). At the hearing, Plaintiff even attributed her nausea more to her migraines and stomach issues than to her medications. (R. 53). Additionally, as the Commissioner argues, Plaintiff made no complaints of side effects, nausea, or drowsiness at many visits in the record. (Doc. 10, p. 7). The Court found only one medical visit that would plausibly support Plaintiff's testimony about her side effects: a November 2019 emergency room visit at which Plaintiff reported she had "weakness

and [was] sleeping a lot on methadone." (R. 693). This one record alone is not enough to show that the ALJ failed to consider Plaintiff's record-supported limitations as whole when the remaining portions of the record simply fail to support Plaintiff's suggestion that she suffered medication side effects that limited her ability to function or work during the relevant period.

Plaintiff cites several cases in support of her argument that the ALJ did not adequately consider the side effects of Plaintiff's medications. (Doc. 8, p. 6-7). In those cases, the ALJ either ignored record supported side effects, [1] misconstrued Plaintiff's testimony,[2] or ignored a medical opinion about how the claimant's medications would affect their ability to work.[3] As discussed above, the record and the ALJ's decision in this case are distinguishable from these cases because Plaintiff's testimony and report of side effects are not supported anywhere in the record other than in her subjective reports. The only medical opinion suggesting any limitations due to medication side effects was from Dr. Vaughn in September 2022 (Ex. 23F), after the relevant period, which the ALJ appropriately found unpersuasive. (R. 20-21). The cases cited by Plaintiff do not support remand in this case.

An ALJ is responsible for assessing a claimant's RFC and needs only to account for supported limitations, including any side effects that a claimant may experience. *See* 20 C.F.R. §§ 404.1546(c); *see, e.g., Burgin v. Comm'r of Soc. Sec.* 420 F. App'x 901, 904 (11th Cir. 2011) (citing *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990)). The record here fails to support Plaintiff's subjective allegations that she was limited by the side effects of medication. The ALJ adequately and thoroughly explained the decision, and the RFC and resulting decision are

---

[1] *Lacy v. Barnhart*, 309 F. Supp. 2d 1345 (N.D. Ala. Mar. 16, 2004); *Thomas v. Barnhart*, 2008 WL 822514 (M.D. Ga. Mar. 26, 2008).
[2] *McDevitt v. Comm'r of Soc. Sec.*, 241 F. Appx. 615 (11th Cir. 2007); *Thomas,* 2008 WL 822514.
[3] *Yates v. Astrue*, 2008 WL 1882653 (M.D. Fla. Apr. 24, 2008).

supported by substantial evidence. Based on the foregoing, the Commissioner's decision is **AFFIRMED**.

      **SO ORDERED**, this 10th day of March, 2025.

                                          s/ Charles H. Weigle
                                          Charles H. Weigle
                                          United States Magistrate Judge